**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| Jamel Williams,<br><br>   Plaintiff,<br>  v.<br><br>Henry McMaster, Alan Wilson, and<br>Director, *South Carolina Department of Corrections*,<br><br>   Defendants. | Case No. 1:26-cv-00157-RMG<br><br><br>**ORDER** |

This matter is before the Court upon the Report and Recommendation ("R&R") of the Magistrate Judge, recommending that this action be summarily dismissed without prejudice and without further leave to amend. (Dkt. No. 17). Plaintiff filed objections to the R&R. (Dkt. No. 20). For the reasons set forth below, the Court adopts the R&R with one modification and dismisses this action without prejudice and without further leave to amend.

## I. Background

In March 2019, Plaintiff, a state prisoner proceeding *pro se*, was charged with murder, attempted murder, and possession of a weapon during a violent crime. (Dkt. No. 17 at 1-2). Prior to his criminal trial, Plaintiff communicated to his trial counsel that he wanted to pursue a self-defense theory. *Id*. at 2. To that end, Plaintiff wished to move for a pretrial hearing pursuant to South Carolina's Protection of Persons and Property Act (the "Act"), S.C. Code Ann. § 16-11-440, seeking immunity from prosecution on the ground that his use of deadly force during the events

1

leading to his indictment was legally justified. *Id*.[1] Trial counsel advised Plaintiff against seeking an immunity hearing because it would provide "the State two opportunities to cross-examine [Plaintiff], essentially giving the State a trial run." *Id*. Based on this advice, Plaintiff decided not to seek a hearing. *Id*. He was ultimately convicted of all three criminal counts and sentenced to life imprisonment. *Id*.

Plaintiff appealed his conviction to the South Carolina Court of Appeals, and his appeal was dismissed. *Id*. Thereafter, he filed an application for post-conviction relief ("PCR"), which was denied. *Id*. Relevant here, Plaintiff asserted in his PCR application that counsel performed ineffectively under *Strickland*[2] by failing to request an immunity hearing under the Act. *Id*. In rejecting his claim, the court determined that Plaintiff's trial counsel was not deficient for advising him to forego the hearing because that advice was based in reasonable trial strategy. *Id*. Moreover, the court noted that "[Plaintiff] was apprised that a pretrial immunity hearing was an option, but . . . decided not to proceed with one." *Id*. The court further found that Plaintiff could not show prejudice because he was able to present the same defense at trial and was convicted beyond a reasonable doubt. *Id*. Plaintiff's appeal of the dismissal of his PCR application is currently pending before the South Carolina Supreme Court. *Id*. at 3.

On January 15, 2026, Plaintiff filed this action under 42 U.S.C. § 1983 against Defendants in their official capacities. (Dkt. No. 1). The Amended Complaint alleges that Defendants failed to "provide a mandatory pretrial immunity adjudication required by state law, which constitutes a

---

[1] Significantly, it is the criminal defendant's responsibility to raise the defense of immunity during pretrial. *See State v. Duncan*, 709 S.E.2d 662, 665 (S.C. 2011) (noting that a criminal defendant has the substantive right to assert immunity from prosecution and to avoid being subjected to trial).
[2] 466 U.S. 668 (1984).

structural procedural due-process violation independent of his conviction." (Dkt. No. 9 at ¶ 3). Plaintiff further alleges that "[t]he failure to adjudicate the immunity claim impaired [his] ability to obtain judicial review of a non-frivolous legal claim" and "constitutes [the] denial of meaningful access to courts." *Id*. at ¶¶ 24-25. For relief, Plaintiff alleges that he is not "challeng[ing] the validity of his conviction or sentence" nor requesting that he be released; instead, Plaintiff is seeking "[c]ompensatory damages for the constitutional injury," "[d]eclaratory judgment that the failure to adjudicate statutory immunity violated the Fourteenth Amendment," and "[p]rospective injunctive relief requiring constitutionally adequate procedures." *Id*. at 1, 5.

Plaintiff's claims were referred to a Magistrate Judge, who recommended dismissing this action without prejudice and without further leave to amend. (Dkt. No. 17). In reaching this conclusion, the Magistrate Judge first observed that South Carolina law does not entitle criminal defendants to an immunity hearing as a matter of right; rather, a defendant must affirmatively raise the issue before the court. *Id*. at 7. Accordingly, the Magistrate Judge determined that Defendants cannot be said to have denied Plaintiff a hearing that he never requested. *Id*. Nevertheless, the Magistrate Judge concluded that, even assuming Plaintiff had requested a hearing under the Act, his § 1983 action would be barred by *Heck v. Humphrey*[3] and its progeny, which hold that a state prisoner may not seek damages or equitable relief under § 1983 where success would necessarily imply the invalidity of his conviction, unless that conviction has already been reversed, expunged, or otherwise invalidated. *Id*. at 7-9.

---

[3] 512 U.S. 477 (1994).

The Magistrate Judge specifically reasoned that Plaintiff's § 1983 claim is barred because it "centers around his underlying criminal conviction and PCR proceedings," as indicated by the challenge to his "ongoing custody without a lawful determination of the statutory immunity claim." *Id*. at 9. Moreover, the R&R notes that "Plaintiff seeks relief for a past wrong that very much impacts the validity of his convictions and ongoing confinement, placing his claims squarely under *Heck*." *Id*. Relatedly, the Magistrate Judge asserted that Plaintiff's claims "sound more accurately in habeas corpus," but that, because his state case is still pending, the court could not construe his pleading as a petition under 28 U.S.C. § 2254. *Id*. at 9 n.7. Finally, the R&R noted that even if Plaintiff's claims were not barred by *Heck*, the Amended Complaint fails to establish the requisite personal involvement on the part of Defendants for a § 1983 claim. *Id*. at 9-10. In short, the Magistrate Judge determined that the Amended Complaint does not "demonstrate how [Defendants] were personally involved in the decision to proceed with his criminal prosecution without an immunity hearing. Rather, he simply names them in their supervisory capacities only, which is not enough to state an actionable claim to relief under § 1983." *Id*. at 10.

Plaintiff objects to the R&R on five bases. (Dkt. No. 20). This matter is ripe for disposition.

## II.    Legal Standard

### A.  Magistrate's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R&R to which specific objections are made. *See* 28 U.S.C. § 636(b)(1). Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id*. Where the petitioner fails to

4

timely file any specific objections, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citation and punctuation omitted).

### B. Pro Se Pleadings

This Court liberally construes complaints filed by *pro se* litigants to allow the development of a potentially meritorious case. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a viable federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) (citation omitted).

## III.   Discussion

### A. Objection One

Plaintiff contends that the Magistrate Judge misapplied *Heck v. Humphrey*. (Dkt. No. 20 at 1-3). He argues that success on his claims would neither invalidate his conviction nor affect the duration of his sentence or result in his release; rather, his request for equitable relief seeks only to secure constitutionally adequate procedures—namely, an immunity hearing as contemplated by South Carolina law. *Id*. at 2-3. Therefore, Plaintiff contends, *Heck* does not bar his claim. *Id*. at 3.

In *Heck v. Humphrey*, the United States Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

512 U.S. 477, 486–87 (1994). "A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." *Id*. at 487 (emphasis in original). Thus, when a state prisoner brings a claim under § 1983, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* This requirement, known as "favorable termination," "is rooted in pragmatic concerns with avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough v. Smith*, 588 U.S. 109, 117-18 (2019) (citation omitted). "The requirement likewise avoids allowing collateral attacks on criminal judgments through civil litigation." *Id*. at 118 (citation omitted).

"Even a prisoner who has fully exhausted available state remedies has no cause of action under § 1983 unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus." *Heck*, 512 U.S. at 489. Moreover, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Here, Plaintiff claims that Defendants denied him access to the court in connection with the immunity hearing. *See* (Dkt. No. 9 at 4) ("Defendants deprived Plaintiff of [a state-created entitlement requiring adjudication] by failing to provide the mandated immunity determination."). Because that proceeding never occurred—and Plaintiff alleges that omission as the source of his injury—the Court construes Plaintiff to be asserting backward-looking access-to-the-courts

claims.[4] Significantly, such claims do not look forward to future litigation, "but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Christopher v. Harbury*, 536 U.S. 403, 414 (2002). "The ultimate object of these sorts of access claims, then, is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Id.* "Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Id.* at 414–15. The right of access to the courts "is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415. Therefore, to demonstrate an injury, a plaintiff must identify a nonfrivolous, arguable underlying claim blocked or lost by the alleged denial of access to the courts. *Id.* The underlying cause of action, whether anticipated or lost, is an element of the access claim. *Id.*

Accordingly, Plaintiff cannot establish the requisite "actual injury" unless he also shows that his self-defense claim had merit, which would necessarily imply the invalidity of his conviction. *See Coulston v. Superintendent Houtzdale SCI*, 651 F. App'x 139, 142 (3d Cir. 2016) (holding that *Heck* barred the plaintiff's § 1983 access-to-courts claims seeking damages for prison officials' alleged interference with his filing a PCRA petition challenging his murder conviction because the plaintiff could not "demonstrate that the loss of his PCRA claim injured him unless he also demonstrates that his PCRA petition had merit, which necessarily would imply the invalidity

---

[4] It is well-established that the Fourteenth Amendment affords prisoners "adequate, effective, and meaningful" access to the courts. *Bounds v. Smith*, 430 U.S. 817, 822 (1977) (citation omitted).

of his murder conviction"). Under *Heck* and its progeny, such a claim does not accrue unless and until the conviction has been invalidated. *See Wilkinson*, 544 U.S. at 81-82 ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."). Thus, because Plaintiff's conviction remains intact, his access-to-the-courts claim is barred, and therefore the Magistrate Judge did not err in determining that *Heck* barred Plaintiff's claims.

### B. Objection Two

Next, Plaintiff asserts that the Magistrate Judge erred by characterizing his claims as "sound[ing] in habeas corpus." (Dkt. No. 20 at 3). He reiterates that this action challenges the constitutionality of the procedures used during his pretrial proceedings and that he does not seek to be released or have his conviction invalidated. *Id*. Accordingly, he claims, "this action is properly brought under [§ 1983], and the [R&R's] habeas characterization is legal error." *Id*.

As noted above, the Supreme Court articulated that the rule announced in *Heck* was, in part, intended to prevent state prisoners bringing § 1983 claims from mounting a "collateral attack[s]" on the validity of their conviction and thus venturing into the domain of the habeas statute. *Heck*, 512 U.S. at 485 (citation omitted). Such a suit might lead to "parallel litigation" respecting "the issues of probable cause and guilt" and create "conflicting" judgments about the same conduct, as the § 1983 suit might suggest that the plaintiff should be released notwithstanding a different outcome in criminal or habeas proceedings. *Id*. at 484 (citation omitted). Hence the *Heck* bar on "§ 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." *Id*. at 485.

After *Heck*, the Court drew a line between *Heck*-type claims and those seeking prospective relief. In *Edwards v. Balisok*, a state prisoner alleged that procedures used in a disciplinary hearing, depriving him of good-time credits and thereby extending his sentence, violated his Fourteenth Amendment due process rights. 520 U.S. 641 (1997). He sought money damages for the alleged past violation and an injunction requiring prison officials to adopt new procedures to "prevent future violations." *Id*. at 643. The Court held that, like in *Heck*, the prisoner could not obtain damages without demonstrating "the invalidity of the punishment imposed" on him (*i.e.*, the loss of his good-time credits), and thus this claim sounded in habeas. *Id*. at 648. On the other hand, the Court found that the claim for "prospective injunctive relief"—the use of fairer procedures in the future—was distinct. *Id*. at 645. "That is to say, [the plaintiff's] claim posited that the procedures were wrong, but not necessarily that the result was." *Id*. "Ordinarily," the Court articulated, "a prayer for such prospective relief will not 'necessarily imply' the invalidity of a previous loss of good-time credits, and so may properly be brought under § 1983." *Id*. at 648 (citation omitted).

Likewise, in *Wilkinson v. Dotson*, the Court allowed state prisoners to bring a § 1983 suit alleging that existing parole procedures violated the Due Process Clause and requesting an injunction that the State "comply with constitutional" requirements "in the future." 544 U.S. at 77. That claim for "*future* relief," the Court determined, was "distant" from "the core of habeas" and so not barred by *Heck*. *Id*. at 82 (emphasis in original).

Plaintiff's claims are distinct from those in *Edwards* and *Wilkinson*. As noted above, Plaintiff's access-to-the-courts claims are backward-looking, as the ultimate objective of these kinds of claims is to vindicate a lost opportunity to litigate. *See Harbury*, 536 U.S. at 415. Accordingly, in order to establish an injury, Plaintiff would need to show not just that he was denied an immunity hearing, but that the denial caused the loss of a meritorious self-defense claim.

9

In other words, success on Plaintiff's claims would necessarily require a determination that, had the hearing occurred, he would have prevailed on immunity or otherwise avoided conviction. That showing would directly implicate—and undermine—the validity of his convictions. Accordingly, notwithstanding Plaintiff's characterization of his claims as procedural, the substance of the relief he seeks amounts to a collateral attack on his convictions, placing his claims within the core concerns of habeas corpus. See *Heck*, 512 U.S. at 481. The Magistrate Judge therefore did not err in characterizing Plaintiff's claims as sounding in habeas.

### C. Objection Three

Plaintiff contends that the Magistrate Judge erred by declining to stay this matter pending resolution of his appeal before the South Carolina Supreme Court. (Dkt. No. 20 at 4). He argues that, even if his claims are presently barred under *Heck*, the Court should stay—rather than dismiss—the action because, if his conviction is reversed on appeal, his claims would no longer be *Heck*-barred. *Id*.

In *Heck*, the Supreme Court held: "[I]f a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings." 512 U.S. at 487 n.7 (citation omitted). Under these circumstances, the Court in *Wallace v. Kato*, upon which Plaintiff relies, recognized a court's general authority to stay a civil rights false-arrest claim pending resolution of a related criminal case underlying the civil-rights-plaintiff's arrest:

> If a plaintiff files a false-arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case . . . is ended.

549 U.S. 384, 393-94 (2007) (citation omitted). The Court noted that a stay may be appropriate where a favorable judgment would necessarily impugn any resulting criminal conviction. *Id.* at 394 (citing *Heck*, 512 U.S. at 487 n.8).

In *Edwards*—on which the Court relied in the pertinent part of *Wallace*—the Court specifically held that the district court judge had erred by staying a § 1983 case, rather than dismissing it, while the plaintiff sought review of a prison disciplinary decision that imposed a *Heck* bar:

> [W]e must add a word concerning the District Court's decision to stay this § 1983 action . . . rather than dismiss it. . . . This was error. We reemphasize that § 1983 contains no judicially imposed exhaustion requirement . . . ; absent some other bar to the suit, a claim either is cognizable under § 1983 and should immediately go forward, or is not cognizable and should be dismissed.

520 U.S. at 649 (citing *Heck*, 512 U.S. at 481, 483).

Here, as noted above, Plaintiff's claims are not cognizable because, if proved, it would invalidate an "outstanding criminal judgment." *Heck*, 512 U.S. at 487. His claims will only become cognizable if that criminal judgment is "reversed, expunged, invalidated, or impugned" on appeal or by some proper avenue of collateral review. *Id.* at 489. As long as the conviction remains "extant," Plaintiff effectively has no claim. *Wallace*, 549 U.S. at 393. Under *Edwards*, that means this Court is required to dismiss, rather than stay, because there is nothing to stay. Therefore, the Magistrate Judge did not err by recommending that this action be dismissed.

### D. Objection Four

Plaintiff contends that the Magistrate Judge erred by determining that the Amended Complaint failed to state a claim because Plaintiff failed to allege that Defendants were personally involved in the deprivation of his constitutional rights. (Dkt. No. 20 at 4-5). Plaintiff argues that

11

because he seeks equitable relief against Defendants in their official capacities, there is no requirement for personal involvement. *Id*. at 5.

When a plaintiff asserts a claim against a public official in his or her official capacity, the Court treats the claim as one against the governmental entity the official represents. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citation omitted). Thus, a plaintiff does not need to allege personal involvement by a defendant to bring an official capacity claim against that party. *See Revene v. Charles Cnty. Comm'rs.*, 882 F.2d 870, 874 (4th Cir. 1989) (determining that, where the defendant did not allege personal involvement by the sheriff in his § 1983 suit, only the official capacity claim against the sheriff was legally viable, not the individual claim). Accordingly, Plaintiff is correct that the Magistrate Judge incorrectly determined that the Amended Complaint failed to state a claim because it did not allege that Defendants were personally involved. Notwithstanding, the Court finds that the Amended Complaint fails to state a claim for a different reason.

In the absence of consent or abrogation by Congress, a State and its arms enjoy immunity under the Eleventh Amendment of the United States Constitution from private suits. *See Alden v. Maine*, 527 U.S. 706, 754–56 (1999); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70 (1989). As state officials, Defendants are arms of the State of South Carolina. *See id*. at 70. As such, the Eleventh Amendment protects Defendants from suit whether money damages or equitable relief is sought. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984) ("This [Eleventh Amendment] jurisdictional bar applies regardless of the nature of the relief sought.") (citation omitted).

There is, however, an exception to Eleventh Amendment immunity under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908): "Federal courts may exercise jurisdiction over claims

against state officials by persons at risk of or suffering from violations by those officials of federally protected rights, if (1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Jemsek v. Rhyne*, 662 F. App'x 206, 210-11 (4th Cir. 2016) (citation and punctuation omitted). "The theory behind this exception is that a state cannot authorize its officers to violate federal law, so those officers are stripped of sovereign immunity." *Id.* (citation omitted). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002) (citation and punctuation omitted).

Here, as previously discussed, Plaintiff's claims are retrospective in nature—aimed at remedying a past injury rather than preventing an ongoing violation of federal law. Accordingly, the requested relief falls outside the scope of *Ex parte Young*, and Defendants are entitled to Eleventh Amendment immunity. Because this immunity bars Plaintiff's claims, the Amended Complaint fails to state a claim upon which relief can be granted.

### E. Objection Five

Plaintiff's final objection states that he is experiencing an ongoing constitutional violation and continued custody following a criminal prosecution without a constitutionally required immunity determination. (Dkt. No. 20 at 5-6).

A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Plaintiff's fifth objection fails to direct the Court to any specific error in the Magistrate Judge's proposed

findings and recommendations. Instead, Plaintiff simply reiterates what he has alleged in the Amended Complaint. Therefore, this objection must be overruled.

## IV.    Conclusion

For the foregoing reasons, the Court substantially **ADOPTS** the R&R (Dkt. No. 17) with the modification that the Amended Complaint fails to state a claim on alternative grounds and **DISMISSES** this action without prejudice and without further leave to amend.

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
Richard Mark Gergel
United States District Judge

April 27, 2026
Charleston, South Carolina